```
            UNITED STATES DISTRICT COURT
         SOUTHERN DISTRICT OF WEST VIRGINIA
                    AT CHARLESTON
```

**JOHN WOLFE and**
**WOLFE CONSTRUCTION COMPANY, INC.,**

       **Plaintiffs**

**v.**                             **Civil Action No. 2:07-0115**

**NATIONAL MEDICAL CARE, INC.**
**d/b/a FRESENIUS MEDICAL CARE**
**NORTH AMERICA,**

       **Defendant**


## MEMORANDUM OPINION AND ORDER

Pending are (1) plaintiffs' motion for entry of default judgment, filed August 27, 2007, and (2) defendants' motions (a) requesting deferral of any order granting default judgment, filed September 7, 2007, (b) to set aside default, filed September 10, 2007, and (c) for leave to file a late answer, filed September 11, 2007.

I.

On February 21, 2007, plaintiffs John Wolfe and Wolfe Construction Company instituted this action (herein collectively

as "Wolfe").  On June 12, 2007, summons issued.  On July 6, 2007, the summons was returned executed by the secretary of state.  On August 29, 2007, the clerk entered default, after Wolfe moved on August 27, 2007, for entry of default judgment.

On September 7, 2007, counsel noticed an appearance on behalf of defendant National Medical Care, Inc. ("Fresenius") and moved the court, inter alia, to set aside the entry of default.  In its supporting memorandum, Fresenius contends, in essence, as follows:

1. This action arises out of earlier litigation between the parties styled National Medical Care v. Espiritu, 2:03-20 (S.D. W Va. Jan. 8, 2003)("NMC I"), in which Wolfe and Julian L. Espiritu, Jr., M.D., were defendants who ultimately obtained summary judgment on July 6, 2004;

2. On October 4, 2004, Espiritu promptly instituted a civil action styled Espiritu v. National Medical Care, 2:04-1073 (S.D. W. Va. Oct. 4, 2004)("NMC II"), alleging malicious prosecution against Fresenius;

3. Fresenius' corporate counsel Stephanie Masiello managed NMC II, which was resolved, apparently by settlement, at the end of 2005.  Ronald L. Castle, Fresenius Vice-President and Deputy General Counsel for Litigation, was aware of the settlement;

4. Masiello was transferred to another Fresenius group in early August 2006 and no attorney remaining in the Fresenius litigation group was familiar with either NMC I or NMC II;

5. On June 27, 2007, a Fresenius docket clerk received the complaint in this action.  The clerk ordinarily would have assigned the matter to an in-house staff attorney

based upon subject matter and geographical considerations. The matter was complicated, however, by the fact that (1) the new matter did not fall into any well-defined category, such as a real estate lease dispute or a slip-and-fall case, and (2) the new case referenced earlier litigation handled by Masiello, who had since left the litigation department. The clerk thus scanned and delivered the complaint via email to Castle while he was traveling;

6. On July 2, 2007, Castle opened and saved the document;

7. After speaking with Masiello respecting whether a prior release covered this action, Castle intended to, and thought he had, assigned the case to Julie Hawkins, another Fresenius litigation department lawyer. In fact, Castle failed to make the assignment;

8. On September 4, 2007, Fresenius first learned of the entry of default when Masiello received a letter from former counsel for Fresenius, Benjamin Bailey;

9. Masiello immediately contacted Castle, who then retained counsel and attempted to contact Wolfe's counsel;

10. On September 5, Wolfe's counsel refused to agree to a set aside of the default;

11. Castle was out of the office from September 4 through September 7, 2007, and his presence was necessary to prepare an affidavit supporting a motion to set aside entry of default;

12. On September 10, 2007, the motion to set aside entry of default was filed.

Fresenius contends it acted with reasonable promptness and that it has a meritorious defense to the complaint. Specifically, it contends that Wolfe's malicious prosecution and abuse-of-process claims are barred by the applicable statute of

limitations.  Wolfe responds by contending that Fresenius has failed to demonstrate good cause to set aside the default inasmuch as (1) Fresenius received notice of the complaint on June 27, 2007, but failed to act until early September 2007, (2) Fresenius is a large corporate entity with the ability to respond promptly to litigation instituted against it, and (3) Fresenius does not have a meritorious defense.[1]  Fresenius replies that (1) it acted with reasonable promptness following notice that default had been entered, (2) less than five business days elapsed between Fresenius' discovery of its failure to answer and moving to set aside default, and (3) it possesses a meritorious defense.

II.

Federal Rule of Civil Procedure 55(c) provides pertinently as follows: "For good cause shown the court may set

---

[1] Respecting Fresenius' alleged limitations defense, Wolfe responds that (1) summary judgment was entered in NMC I on July 6, 2004, but the court did not dismiss the case until February 22, 2006, (2) the instant action was instituted February 21, 2007, and (3) the elements for the claims alleged by Wolfe in the instant action require that the offending litigation cease in order for accrual to occur.  Fresenius responds that there is a "legitimate and substantial question as to whether the malicious prosecution [and abuse-of-process] claim[s] . . . [alleged here are] time barred and Fresenius should be given the opportunity to litigate the issue."  (Def.'s Reply at 5).

aside an entry of default . . . ."  Fed. R. Civ. P. 55(c).  Our court of appeals recently observed as follows respecting requests to set aside defaults:

> When deciding whether to set aside an entry of default, a district court should consider whether the moving party has a meritorious defense, whether it acts with reasonable promptness, the personal responsibility of the defaulting party, the prejudice to the party, whether there is a history of dilatory action, and the availability of sanctions less drastic.

Payne ex rel. Estate of Calzada v. Brake  439 F.3d 198, 204-05 (4th Cir. 2006).  In assessing these factors, it is noteworthy that in the related context of default judgment set asides our court of appeals has observed that "over the years . . . [it has] taken an increasingly liberal view of Rule 60(b) . . . ." Augusta Fiberglass Coatings, Inc. v. Fodor Contracting Corp., 843 F.2d 808, 810 (4th Cir. 1988).

Regarding the issue of a meritorious defense, it is not clear as a matter of law at this juncture that Fresenius' limitations defense will fail.  The matter requires further factual development and legal analysis best performed following an opportunity for both sides to engage in discovery.  See Augusta Fiberglass Coatings, Inc. v. Fodor Contracting Corp., 843 F.2d 808, 812 (4th Cir. 1988)("A meritorious defense requires a proffer of evidence which would permit a finding for the

defaulting party or which would establish a valid counterclaim. 'The underlying concern is . . . whether there is some possibility that the outcome . . . after a full trial will be contrary to the result achieved by the default.'") (citations omitted).

The issues of reasonable promptness and personal responsibility of the defaulting party are best addressed in tandem.  It is undisputed that Castle's oversight and unavailability caused the predicament presently faced by Fresenius.  The question is whether Fresenius should be charged with the harsh consequence of forfeiting its right to defend the serious torts alleged against it due to an error by its lawyer-agent.[2]  In assessing these two factors, it is noteworthy that

---

[2]It is of some significance that Castle is not an ordinary employee, but rather corporate counsel charged with defending the entity's legal interests.  Our court of appeals has observed, in a somewhat distinguishable setting respecting outside counsel, as follows:

> Applying these principles to the present case, the district court erred because it failed to distinguish between the fault of Fodor['s] attorney and the fault, if any, of Fodor itself. Without discussing Fodor's diligence in moving for relief or the merit of Fodor's proffered defenses, the district court lumped Fodor and its attorney together in finding that "the defendant is the author of its own demise." Moreover, upon a thorough review of the record, we are convinced that Fodor is largely blameless for the default below, which
> (continued...)

**Fresenius had in place a settled procedure for receiving and assigning civil actions. This is not a case where a haphazard and ill-conceived litigation response mechanism predictably caused the default. Instead, Fresenius' systematic assignment protocol was compromised by the unusual nature of this action. On balance, the court weighs the reasonable promptness and personal responsibility factors in favor of setting aside default, especially since Fresenius moved for relief within four business days after learning default had been entered. Cf. Augusta Fiberglass, 843 F.2d at 812 ("Showing awakened speed, Fodor moved for relief within two weeks of the entry of the judgment, well within the rule's one-year limit.").**

**It is also of significance that Wolfe suffers little prejudice as a result of a set-aside order. Beyond having to**

---

²(...continued)
was due primarily to its attorney's carelessness in his handling of the amended complaint.

Augusta Fiberglass Coatings, Inc. v. Fodor Contracting Corp., 843 F.2d 808, 811-12 (4th Cir. 1988). Inasmuch as Castle was a corporate agent, Augusta is not controlling. See Heyman v. M.L. Marketing Co., 116 F.3d 91, 94 (4th Cir. 1997) ("[W]hen dismissal is caused by the negligence of a party, vacatur is not granted as freely."); Park Corp. v. Lexington Ins. Co., 812 F.2d 894, 897 (4th Cir. 1987)("The unexplained disappearance of the summons and complaint from Lexington's mail room does not constitute grounds for relief from the default judgment under Rule 60(b)(1)."). Its observations, however, are worthy of some minimal consideration.

incur expenses in moving for default and responding to Fresenius' pending motions, Wolfe loses only its ability to secure judgment without the court having benefit of the adversarial process.  See Augusta Fiberglass, 843 F.2d at 812 ("As to prejudice, we perceive no disadvantage to Augusta beyond that suffered by any party which loses a quick victory.").  For instance, there is no indication that Fresenius is approaching insolvency.

There is no history of dilatory action on Fresenius' part.  Further, regarding the availability of sanctions less drastic, Wolfe has, as noted, incurred the expense of moving for default judgment and responding to Fresenius' pending motions.  Those expenses are properly borne by Fresenius and their recompense will make Wolfe whole.  This lesser fee and costs sanction appears to satisfy any lingering concerns regarding prejudice.

### III.

Based upon the foregoing discussion, the court ORDERS as follows:

1. That Fresenius' motion to set aside default be, and it hereby is, granted;

8

2. That Fresenius' motion to file a late answer be, and it hereby is, granted;[3]

3. That the proposed answer be, and it hereby is, filed today;

4. That Wolfe's motion for entry of default judgment and Fresenius' motion requesting deferral of any order granting default judgment be, and they hereby are, denied as moot; and

5. That Wolfe produce to Fresenius, no later than February 7, 2008, a detailed and itemized listing of the reasonable fees and costs incurred in preparing the default judgment motion and responding to Fresenius' pending motions dealt with herein.  If the parties are

---

[3]The request to file a late answer is governed by the excusable neglect standard found in Rule 6(b).  The standard is quite flexible.  See 4B Charles A. Wright & Arthur R. Miller, Federal Practice and Procedure § 1165 (3rd ed. 2002) ("Excusable neglect is intended and has proven to be quite elastic in its application.  In essence it is an equitable concept that must take account of all relevant circumstances of the party's failure to act within the required time.  Common sense indicates that among the most important factors are: the possibility of prejudice to the other parties, the length of the applicant's delay and its impact on the proceeding, the reason for the delay and whether it was within the control of the movant, and whether the movant has acted in good faith.").  An analysis of these factors, like those governing the good cause inquiry, counsel in favor of granting the relief requested by Fresenius.

unable to amicably resolve the reasonable amount of fees and costs to which Wolfe is entitled, Wolfe may move for relief on the point no later than February 21, 2008.

The Clerk is directed to forward copies of this written opinion and order to all counsel of record.

DATED: January 23, 2008

John T. Copenhaver, Jr.
United States District Judge