IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

CHARLESTON

JOHN WOLFE and
WOLFE CONSTRUCTION CO., INC.,

      Plaintiffs,

v.                                          Case No. 2:07-cv-00115

NATIONAL MEDICAL CARE, INC.
d/b/a FRESENIUS MEDICAL CARE
NORTH AMERICA,

      Defendant.

MEMORANDUM OPINION AND ORDER

In this action, Plaintiffs bring claims of malicious prosecution and abuse of process after they were named by Defendant in a lawsuit alleging copyright infringement. In the copyright infringement action, Plaintiffs were granted summary judgment, and the presiding District Judge found that Plaintiffs had not infringed the copyright. The nature of the instant discovery dispute relates to Plaintiffs' efforts to obtain discovery regarding (1) the validity of Defendant's copyright; and (2) a settlement agreement and related documents from a malicious prosecution case filed by another defendant in the copyright infringement action.

Currently pending before the court is Plaintiffs' Motion to Compel Discovery, filed February 27, 2009. (Docket # 94.) On March 20, 2009, Defendant responded (# 104), and Plaintiffs replied

on March 27, 2009 (# 107), making the matter ripe for decision. The court conducted a hearing on April 20, 2009.

**Allegations in the Complaint and Underlying Action**

Wolfe Construction Company, Inc., a West Virginia construction company, and its sole shareholder, John Wolfe (hereinafter collectively referred to as "the Wolfes"), filed this action (the "instant matter") on February 21, 2007, against National Medical Care, Inc. d/b/a Fresenius Medical Care North America ("Fresenius"), a Delaware corporation and provider of dialysis products, services and care for patients with chronic kidney failure. The Wolfes allege malicious prosecution and abuse of process stemming from a lawsuit filed in this court styled National Medical Care, Inc. d/b/a Fresenius Medical Care North America v. Espiritu, et al., Case Number 2:03-cv-0020 ("NMC I" or "underlying action").

Fresenius operates 1,000 kidney dialysis clinics in North America and owns and operates two kidney dialysis clinics constructed by the Wolfes in 1998 and 1999 in Putnam and Kanawha Counties. (# 1, ¶¶ 4, 6.) In 2002, the Wolfes served as contractor with respect to the construction of a third kidney dialysis facility in South Charleston, West Virginia, constructed for and operated by Greater Charleston Dialysis, PLLC (hereinafter "GCD"), under the direction of Dr. Julian Espiritu. (# 1, ¶ 7.)

On January 8, 2003, Fresenius sued Dr. Espiritu and GCD, among

others, in NMC I alleging violation of federal copyright laws with respect to certain technical drawings, known as "Standard Details."[1] (# 1, ¶ 9; # 94-2, p. 2.)  Fresenius eventually added as defendants the architect, Uner Gokcen ("Gokcen"), the architecture firm on the project, Architurk/Medarch, Inc., and the Wolfes.  As to the Wolfes in particular, Fresenius alleged in the underlying action that they were guilty of copyright infringement, vicarious copyright infringement and contributory copyright infringement, in violation of federal copyright laws.  Fresenius asserted that the Wolfes were guilty of copyright infringement by designing, building and installing cabinets, cupboards and the like in GCD.  (# 1, ¶¶ 11-12.)  Fresenius settled with Gokcen and entered into a stipulation of facts signed by Gokcen on June 18, 2003, the day before a hearing on a preliminary injunction sought by Fresenius in NMC I.  (# 94, pp. 7-8.)  In the stipulation of facts, Gokcen admitted that his actions infringed on Fresenius's copyright.  (# 94-3, p. 6.)

On September 30, 2003, Chief Judge Goodwin denied the preliminary injunction as to the Wolfes, Dr. Espiritu and GCD, but granted it as to Gokcen and Architurk/Medarch, Inc.  (# 1, ¶ 13; # 94-2, pp. 2-20.)  Chief Judge Goodwin made several findings of fact.  In particular, he found that in 1998 and 1999, Uner Gokcen

---

[1]  Standard Details "consist of 108 architectural plumbing, mechanical, and electrical component drawings that depict things such as medical cabinets, work stations, dialysis counters, and coat racks." (# 94-2, pp. 2-3.)

and his architectural firm, Architurk/Medarch, Inc., provided architectural services on the two kidney dialysis clinics built by the Wolfes for Fresenius in Putnam and Kanawha Counties.  Gokcen was given a copy of Fresenius's Standard Details to use in designing the two facilities and the Wolfes were provided complete sets of the architectural plans for the two facilities, which included the Standard Details.  (# 94-2, p. 3.)

When Dr. Espiritu contracted with the Wolfes and Gokcen and Architurk/Medarch, Inc. to design and build a dialysis facility in South Charleston, Gokcen prepared a set of "Construction Drawings" for GCD and filed them with the City of South Charleston.  In these Construction Drawings, Gokcen copied portions of the Standard Details, primarily related to cabinetry.  In late 2002, a project manager for Fresenius examined the Construction Drawings and concluded that they contained copies of the Standard Details.  (# 94-2, p. 2.)  The Wolfes contracted with Chandler Plywood Products to supply the cabinetry for GCD.  Chief Judge Goodwin ultimately concluded that Steve Hatcher of Chandler Plywood Products prepared final drawings of the cabinetry and that the cabinetry at GCD was built according to these final drawings.  (# 94-2, p. 3.)

Chief Judge Goodwin further found that "Fresenius has provided the court with the copyright registration for the Standard Details, and the defendants have not introduced evidence calling the validity of the copyright into question.  Therefore, the court

4

**FINDS** that, as of October 16, 2000, [Fresenuis] owned a valid copyright for the Standard Details as 'technical drawings.'" (# 94-2, p. 9.)  In addition, Chief Judge Goodwin found that "Gokcen has stipulated that he copied portions of the Standard Details while preparing GCD's Construction Drawings.  The stipulation is direct evidence that Gokcen made unauthorized copies or reproductions of the Standard Details."  (# 94-2, p. 9.)

Chief Judge Goodwin ultimately concluded that Fresenius failed to establish a prima facie case of copyright infringement as to Dr. Espiritu, GCD and the Wolfes and, as a result, denied Fresenius's motion for a preliminary injunction as to these parties.  (# 94-2, pp. 19-20.)  As to Gokcen, Chief Judge Goodwin concluded that Fresenius had met its burden of showing that Gokcen infringed on Fresenius's copyright and, thus, granted the preliminary injunction as to Gokcen and Architurk/Medarch, Inc.  (# 94-2, p. 20.)

After Chief Judge Goodwin's decision on the preliminary injunction in NMC I, the Wolfes allege that Fresenius pressed forward with NMC I, causing the Wolfes to incur substantial legal fees, out-of-pocket expenses, aggravation, disruption of their business and other damages.  (# 1, ¶ 15.)  On July 6, 2004, in NMC I, Chief Judge Goodwin granted motions for summary judgment filed by the Wolfes, Dr. Espiritu and GCD, but did not dismiss the case because there remained a crossclaim pled by Dr. Espiritu against Gokcen and Architurk/Medarch, Inc.  (# 1, ¶ 16; # 94-3, pp. 2, 18.)

On October 4, 2004, Dr. Espiritu brought a separate civil action in this court alleging malicious prosecution and abuse of process styled <u>Espiritu, et al. v. National Medical Care, Inc.</u>, Case Number 2:04-cv-01073 ("<u>NMC II</u>"). (# 94, pp. 8, 17.) The case was assigned to Chief Judge Goodwin. On October 14, 2005, Fresenius settled <u>NMC II</u> with Dr. Espiritu, and the settlement was confidential. (# 94, p. 8.)

On February 22, 2006, Chief Judge Goodwin entered an agreed dismissal order in <u>NMC I</u>, which was signed by Dr. Espiritu, GCD, Fresenius, Gokcen and Architurk/Medarch, Inc. (# 94, 8.) On February 22, 2006, Chief Judge Goodwin also entered an order dismissing <u>NMC II</u>. (<u>NMC II</u>, # 25.)

The Wolfes allege in the instant matter that Fresenius's claims in <u>NMC I</u> were brought without legal or factual support and that during the lawsuit, "it became apparent that the action against [the Wolfes] lacked a basis in law or fact, and was brought without probable cause." (# 1, ¶¶ 18, 20.) The Wolfes allege malicious prosecution of civil claims and abuse of process. (# 1, ¶¶ 21-28.) The Wolfes seek compensatory and punitive damages, attorneys' fees and costs and pre- and post-judgment interest. (# 1, Prayer for Relief.)

**At-Issue Discovery**

Request for production numbers 2 and 6 are at issue in this matter. The requests and Fresenius's responses are set forth

below:

> **REQUEST NO. 6:**  Please produce all records and documents regarding application for the copyright registration of standard details relating to the Certificate of Registration dated September 20, 2000, a copy of which is attached hereto as Exhibit A.

> **RESPONSE:** Fresenius objects to this Request on the basis that it is overly broad, ambiguous and seeks documents that are not relevant or reasonably calculated to lead to the discovery of admissible evidence.  Documents concerning the application for copyright registration of the Standard Details are not relevant because plaintiffs cannot re-litigate the issue of whether Mr. Gokcen committed a copyright violation with respect to the Standard Details.  The issue of whether the Fresenius Standard Details can be copyrighted and whether Mr. Gokcen infringed on the copyright are both questions of law that have already been decided by Judge Goodwin in the underlying action.  Further, this Request seeks documents protected from disclosure by the attorney-client privilege and/or the work product doctrine.

> **REQUEST NO. 2:**  Please produce all documents relating to the settlement of the case of <u>Julian L. Espiritu, Jr. et al. v. National Medical Care, Inc., d/b/a Fresenius Medical Care North America</u>, Civil Action No. 2:04-cv-1073, in the United States District Court for the Southern District of West Virginia, at Charleston, including but not limited to all drafts, correspondence and executed revisions thereof.

> **RESPONSE:** Fresenius objects to this Request on the basis that it is overly broad, ambiguous and seeks documents that are not relevant and not likely to lead to the discovery of admissible evidence.  This Request also seeks documents that are confidential and protected from disclosure by the attorney-client privilege and/or work product doctrine.

(<u>See</u> Court's Exhibit A, attached hereto.)[2]

---

[2]   Local Civil Rule 37.1(c) requires that a motion to compel discovery must be "accompanied by a statement setting forth verbatim each discovery request or disclosure requirement and any response thereto to which an exception is taken."  Local Rules of the United States District Court for the Southern District of West Virginia, Local Rule of Civil Procedure 37.1(c).

7

The Wolfes sought information related to request number 6 during the deposition of Fresenius's former counsel, Heather Heidelbaugh, who was retained to represent Fresenius in the underlying action in 2002 and who also represented Fresenius in registering the Standard Details in 2000.  Fresenius objected on relevance grounds and asserted the attorney-client privilege.  The Wolfes also asked questions of two former employees of Fresenius related to request number 2, and Fresenius objected on relevance grounds and asserted the attorney-client privilege. (# 94, p. 18.) In their Motion, the Wolfes seek an order compelling production of the documents and deposition testimony of Ms. Heidelbaugh and the former employees of Fresenius.

**Arguments of the Parties**

The Wolfes argue that documents and testimony related to the copyright registration of the Standard Details are relevant because it was fundamental to Fresenius's claims in <u>NMC I</u> that it prove the Standard Details were copyrighted and entitled to copyright protection. (# 94, p. 19.) The Wolfes contend that "[r]elevant to those issues is whether the Standard Details were properly and accurately copyrighted; the scope of copyright protection afforded thereby; and whether the materials submitted and actions culminating in the registration of the Standard Details were

Because Plaintiffs' Motion did not include such a statement, the court requested a copy of the at-issue discovery and Fresenius's responses and has attached it hereto as Court's Exhibit A.

proper, accurate and correct." (# 94, p. 19.) The Wolfes assert that "simply because Fresenius successfully registered its *set* of 108 Standard Details, does not answer the more fundamental question whether its 'technical drawings' of cabinets and a coat rack – included within the entire set of 108 'details' – were copyrightable, or were in fact copyrighted." (# 94, p. 21.) The Wolfes argue that discovery related to the copyright "bear[s] on Fresenius' factual and legal bases to sue Wolfe, and constitute[s] probative evidence of Fresenius' knowledge and intent in the underlying case." (# 94, p. 21.)

Regarding the confidential settlement agreement in NMC II with Dr. Espiritu, the Wolfes argue that they have met the heightened standard of proof as set forth in Young v. State Farm Mutual Auto. Ins. Co., 169 F.R.D. 72, 76 (S.D. W. Va. 1996). The Wolfes assert that the settlement terms and amount, sources of payment and releases, and Fresenius's conduct all bear directly on the intentions and state of mind of Fresenius in its conduct of the underlying action. (# 94, p. 24.) The Wolfes contend that they therefore have met the heightened standard of Young and that disclosure in the limited circumstances of this case and subject to a protective order will cause no harm to the policy manifested in Federal Rule of Evidence 408. (# 94, p. 24.) Finally, the Wolfes assert that Fresenius waived the attorney-client privilege as to the underlying action, NMC I, because it has asserted an

9

advice of counsel defense in the instant matter.  The Wolfes point out that they deposed Ms. Heidelbaugh, who represented Fresenius in the underlying action and in obtaining the copyright registration, and that she would not testify as to her advice related to the copyright registration.  The Wolfes assert that "[b]ecause of the critical relevance of the validity of Fresenius' copyright and copyright registration in the underlying action, the evidence related to the copyright and its registration from the beginning of that matter is relevant in the instant case." (# 94, p. 25.)  The Wolfes further assert that "[t]he evidence is also relevant to Fresenius's advice of counsel defense.  Ms. Heidelbaugh's file likely will show what – accurate or inaccurate, complete or incomplete, – Fresenius disclosed to its counsel, the materials, and in what manner those materials were submitted to the Copyright Office." (# 94, p. 25.)  The Wolfes contend that "[b]ecause of the nexus between the copyright and copyright registration of Fresenius' Standard Details, and the validity or invalidity thereof to the underlying litigation, and hence to this litigation, Fresenius' waiver of attorney client privilege in the underlying litigation reasonably encompasses the discovery sought." (# 94, p. 25.)

The Wolfes also assert that "the discovery sought may be highly probative of Fresenius's state of mind in initiating and continuing baseless claims in the underlying case." (# 94, p. 25.)

10

In addition, they argue that "precisely what knowledge Fresenius and its counsel possessed at the time it sought and obtained the copyright registration will inform their knowledge and intent at the time when Fresenius sued Wolfe."  (# 94, p. 26.)  The Wolfes assert that the discovery bears obvious relevance to issues of malice, bad faith and punitive damages and that because of the nexus of facts, parties, issues and counsel between NMC I and NMC II, Fresenius's waiver of the attorney-client privilege reasonably and fairly should encompass NMC II.  (# 94, p. 26.)

In response, Fresenius argues that the documents related to its copyright are not relevant because the validity of its copyright was litigated and decided in the underlying action. Fresenius asserts that relitigation of the copyright issue is barred by the doctrines of res judicata and collateral estoppel. (# 104, pp. 4-10.)  Fresenius further asserts that the attorney-client privilege has not been waived as to the copyright of the Standard Details.  Fresenius argues that it has lodged the advice of counsel defense in the present case, but that it has waived the privilege only as to the underlying action, NMC I, and not as to any other matter.  Fresenius avers that the Wolfes "are incorrect in further contending that because of the purported relevance of evidence related to the copyright and its registration in the present case, the waiver of privilege necessarily reaches back to the copyright and its registration."  (# 104, p. 10.)  Fresenius

contends that it has not taken the affirmative step of placing at issue the legal advice it received regarding the copyright of its Standard Details or the registration of the same.  (# 104, p. 11.)

As to the settlement in NMC II, Fresenius argues that the Wolfes have not shown why the confidential settlement is relevant to the present case.  Fresenius argues that

> [w]hile it is true that the Espiritu action and this case both arise out of the underlying suit, and the Espiritu action was filed before the Dismissal Order in the underlying suit was entered, it is not accurate that Fresenius was represented by the same counsel in these actions. [footnote omitted].  Even so, these facts do not create relevance where it does not otherwise exist.  The "settlement terms and amount, sources of payment and releases, and Fresenius' conduct" could not have had any bearing on the "intentions and state of mind of Fresenius in how it conducted itself," as plaintiffs allege in their Motion because the Espiritu lawsuit was not even filed until October 4, 2004, about three (3) months *after* the Court granted summary judgment to the defendants in the underlying suit by Order of July 6, 2004.  Although the Dismissal Order was not entered in the underlying suit until February 22, 2006, Fresenius took no action as to the Wolfe defendants in the underlying suit after the entry of summary judgment in their favor.  The settlement of the Espiritu case in November, 2005, well over a year after all litigation between Fresenius and the Wolfe defendants had ended, cannot possibly be relevant.

(# 104, p. 13.)

Fresenius argues further that the confidential settlement in NMC II is not admissible pursuant to Rule 408 of the Federal Rules of Evidence.  Fresenius also argues that the Wolfes cannot meet the heightened standard of Young and that the facts of that case differ significantly from those in the instant matter.  (# 104, p. 14.) Finally, Fresenius asserts that documents and testimony about the

NMC II settlement are protected by the attorney-client privilege
and the work product doctrine.  Again, although they have waived
the attorney-client privilege as to the instant matter, the
privilege remains intact as to NMC II.  (# 104, p. 15.)

     In reply, the Wolfes argue that Chief Judge Goodwin's finding
that Fresenius held a copyright in its Standard Details in sheets
A-9, A-10 and A-11 was based on the Certificate of Registration of
Copyright and the stipulation of admitted facts by Fresenius and
Gokcen.  The Wolfes assert that the stipulation was false or at
least essentially and materially misleading.  The Wolfes argue that
they did not litigate the issue of copyright or the alleged
infringement by Gokcen in the underlying action.  (# 107, p. 1.)

     The Wolfes further argue that neither res judicata nor
collateral estoppel applies in this matter.  Res judicata does not
apply because the two suits do not arise from the same transaction
or pattern of wrongful conduct: "[t]he 'transaction' or alleged
wrongful conduct that gave rise to the underlying case was the
alleged violation of an asserted copyright.  By contrast, the
'transaction' or alleged wrongful conduct that gives rise to the
present case is Fresenius' malicious prosecution of the underlying
lawsuit."  (# 107, p. 3.)  Instead, the Wolfes assert that the
issue is one of issue preclusion, not claim preclusion.  The Wolfes
argue that collateral estoppel does not bar discovery related to
the underlying action because a fact established in prior

litigation by stipulation, rather than judicial resolution, has not been actually litigated for the purpose of collateral estoppel.  (# 107, p. 4.)

**<u>Analysis</u>**

**A.   <u>Request Number 6 - Copyright</u>.**

**1. <u>Res Judicata</u>.**

Fresenius contends that <u>res judicata</u> precludes the discovery sought by the Wolfes in request number 6.   For the doctrine of <u>res judicata</u> to apply, "there must be: (1) a final judgment on the merits in a prior suit; (2) an identity of the cause of action in both the earlier and the later suit; and (3) an identity of parties or their privies in the two suits." <u>Pueschel v. United States</u>, 369 F.3d 345, 354-55 (4th Cir. 2004) (citing <u>Nash County Bd. of Educ. v. Biltmore Co.</u>, 640 F.2d 484, 486 (4th Cir. 1981)).

The first and third factors of the <u>res judicata</u> analysis are easily met.   The court finds that there has been a final judgment on the merits of <u>NMC I</u>, the prior suit.   In <u>NMC I</u>, Chief Judge Goodwin granted summary judgment as to the Wolfes, Dr. Espiritu and GCD and ultimately dismissed the action with prejudice pursuant to an agreed order submitted as to the remaining claims and parties.

For purposes of <u>res judicata</u>, "'a summary judgment has always been considered a final disposition on the merits.'" <u>Shoup v. Bell & Howell Co.</u>, 872 F.2d 1178, 1181 (4th Cir. 1989) (quoting <u>Adkins v. Allstate Ins. Co.</u>, 729 F.2d 974, 976 n.3 (4th Cir. 1984)).

14

Furthermore, "[v]oluntary dismissal with prejudice is a valid, final judgment on the merits ...." <u>Kenny v. Quigg</u>, 820 F.2d 665, 669 (4th Cir. 1987). Thus, the court concludes that this first factor has been satisfied.

Regarding the third factor, an identity of parties, the Wolfes and Fresenius were both parties in the underlying action (<u>NMC I</u>) and in the instant matter.

Turning to the second factor in a <u>res judicata</u> analysis, identity of the cause of action, in determining whether two suits arise out of the same cause of action, the issue does not turn on "whether the claims asserted are identical. Rather, it turns on whether the suits and the claims asserted therein 'arise out of the same transaction or series of transactions or the same core of operative facts.'" <u>Pueschel</u>, 369 F.3d at 355 (quoting <u>In re Varat Enters., Inc.</u>, 81 F.3d 1310, 1316 (4th Cir. 1996)). Furthermore, <u>res judicata</u> "not only bars claims that were actually litigated in a prior proceeding, but also claims that could have been litigated." <u>Id.</u> at 355-56 (citing <u>Federated Dep't Stores, Inc. v. Moitie</u>, 452 U.S. 394, 398 (1981)). Finally, "[a] prior judgment 'cannot be given the effect of extinguishing claims which did not even then exist and which could not possibly have been sued upon in the previous case.'" <u>Kenny</u>, 820 F.2d at 669 (quoting <u>Lawlor v. National Screen Service Corp.</u>, 349 U.S. 322, 328 (1955)).

The court finds that the claims in <u>NMC I</u> and in the instant

15

matter arise out of a different set of operative facts.  NMC I
involved claims of copyright infringement by the Wolfes and others
during construction of a clinic for Dr. Espiritu.  The instant
matter involves claims for malicious prosecution and abuse of
process related to Fresenius's decision to bring suit against the
Wolfes for copyright infringement and to continue that action after
the denial of a preliminary injunction.

Furthermore, at least as to the malicious prosecution claim,
that claim could not have been litigated at the time of the
underlying action because a claim for malicious prosecution
requires "'(1) that the prosecution was set on foot and conducted
to its termination, resulting in plaintiff's discharge; (2) that it
was caused or procured by defendant; (3) that it was without
probable cause; and (4) that it was malicious.'"  Morton v.
Chesapeake and Ohio Railway Co., 399 S.E.2d 464, 467 (W. Va. 1990)
(quoting Preiser v. MacQueen, 352 S.E.2d 22, 24 (W. Va. 1985)).

The Wolfes' claim for malicious prosecution could not have
been brought until the Wolfes' discharge by summary judgment on
July 6, 2004, and the conclusion of the underlying action by Chief
Judge Goodwin on February 22, 2006; thus res judicata does not
preclude discovery related to the validity of the copyright.

**2. Collateral Estoppel**.

In Collins v. Pond Creek Mining Co., 468 F.3d 213, 217 (4th
Cir. 2006), our Court of Appeals stated that

16

> [a] party seeking to rely on the doctrine of collateral estoppel is obliged to establish five elements: (1) that "the issue sought to be precluded is identical to one previously litigated" ("element one"); (2) that the issue was actually determined in the prior proceeding ("element two"); (3) that the issue's determination was "a critical and necessary part of the decision in the prior proceeding" ("element three"); (4) that the prior judgment is final and valid ("element four"); and (5) that the party against whom collateral estoppel is asserted "had a full and fair opportunity to litigate the issue in the previous forum" ("element five").

(quoting <u>Sedlack v. Braswell Servs. Group, Inc.</u>, 134 F.3d 219, 224 (4th Cir. 1998)).

First, the court finds that the issue previously litigated and the discovery currently sought by the Wolfes are identical.  In the instant matter, the Wolfes seek discovery regarding the validity of the copyright.  In <u>NMC I</u>, Chief Judge Goodwin found that the copyright was valid.  He then proceeded to find that Gokcen, but not the Wolfes, had infringed the copyright.

Next, the court finds that the issue of the validity of the copyright was actually litigated in <u>NMC I</u>.  In the order denying Fresenius's motion for a preliminary injunction, Chief Judge Goodwin found that "Fresenius has provided the court with the copyright registration for the Standard Details, and the defendants have not introduced evidence calling the validity of the copyright into question.  Therefore, the court **FINDS** that, as of October 16, 2000, [Fresenius] owned a valid copyright for the Standard Details as 'technical drawings.'" (# 94-2, p. 9.)  In the order granting summary judgment to the Wolfes, Chief Judge Goodwin found that

17

"[t]his court has previously found that Fresenius owns a valid copyright for the Standard Details as 'technical drawings.'" (# 94-3, p. 7.)

The court finds that the validity of Fresenius's copyright was actually litigated for the purpose of collateral estoppel. The Wolfes had the opportunity to present evidence about the validity of Fresenius's copyright, but did not. Harris Trust and Savings Bank v. Ellis, 810 F.2d 700, 705 (7th Cir. 1987) ("When one party introduces evidence on a dispositive issue of fact, and an adverse party with opportunity and motive to contest the presentation chooses not to, the ensuing finding is entitled to the same respect as one litigated to the hilt.").

The Wolfes argue, relying on Uzdavines v. Weeks Marine, Inc., 418 F.3d 138, 146 (2d Cir. 2005), that the issues of the validity of Fresenius's copyright *and* Gokcen's infringement thereof were not actually litigated in light of the stipulation between Gokcen and Fresenius in which Gokcen stipulated that he copied portions of the standard details. In Uzdavines, the United States Court of Appeals for the Second Circuit acknowledged that "[m]ost courts have held that a fact established in prior litigation by stipulation, rather than by judicial resolution, has not been 'actually litigated.'" Id. (citing United States v. Botefuhr, 309 F.3d 1263, 1282-83 (10th Cir. 2002); United States v. Young, 804 F.2d 116, 118 (8th Cir. 1986); 18 James Wm. Moore et al., Moore's Federal Practice §

18

132.03[2][h][i]  (3d ed. 2005)).  In Uzdavines, the court found,
however, that where the parties intended a stipulation to be
binding in future litigation, issues to which the parties have
stipulated will be considered "actually litigated" for the purpose
of collateral estoppel.  Id. at 146-47.

The court finds Uzdavines inapplicable in the instant matter.
The discovery sought by the Wolfes in request number 6 relates only
to the validity of the copyright, an issue that was actually
litigated as noted above.  In comparison, the stipulation between
Fresenius and Gokcen relates to Gokcen's infringement of the
copyright, not its validity.  Chief Judge Goodwin found that
"Gokcen has stipulated that he copied portions of the Standard
Details while preparing GCD's Construction Drawings.  The
stipulation is direct evidence that Gokcen made unauthorized copies
or reproductions of the Standard Details." (# 94-2, p. 9.) Because
the discovery sought to be compelled relates to the validity of the
copyright, an issue not involved in the stipulation, Uzdavines is
simply not applicable.

The court further finds that Chief Judge Goodwin could not
have reached the issue of copyright infringement without first
finding that the copyright was valid.  Thus, the determination of
the validity of the copyright was a critical and necessary part of
NMC I.

Chief Judge Goodwin awarded summary judgment to the Wolfes in

19

NMC I and eventually dismissed the case with prejudice.  As a result, there has been a final and valid judgment.

Finally, the Wolfes argue that they did not litigate the issue of the validity of the copyright or the alleged infringement by Gokcen. The Wolfes certainly had the opportunity to litigate the validity of the copyright issue in NMC I; they simply chose not to do so.  Based on the above, the court finds that collateral estoppel bars discovery related to the validity of Fresenius's copyright.

Turning briefly to other arguments raised by the Wolfes, they argue that Fresenius's assertion of advice of counsel as a defense in this matter waives the attorney-client privilege as to the instant matter and should extend to advice related to the copyright registration.  The court need not reach the issue of whether waiver in the instant matter should extend to advice regarding registration of the copyright in light of the determination that collateral estoppel precludes discovery related to the validity of the copyright.  With respect to testimony of Ms. Heidelbaugh in particular, the court further notes that this issue is not fully before the court, as the Wolfes have not identified the deposition questions which they believe should be answered.

Thus, the court finds that Plaintiffs' Motion should be denied as to request number 6.

## B.   Request Number 2 - NMC II Settlement.

By order entered April 10, 2009, the court requested that

Fresenius submit the confidential settlement agreement in <u>NMC II</u> to the court <u>in camera</u>.  On April 17, 2009, Fresenius complied with the court's request, and the court has reviewed the settlement agreement.  It is hereby **ORDERED** that the Clerk file the settlement agreement, which is attached hereto as Court's Exhibit B, **UNDER SEAL.**

The court has reviewed the settlement agreement and finds that while it does require the parties to the agreement to keep it confidential, there are exceptions, including disclosure in response to a "discovery request."  The court finds that the Wolfes have posed a valid discovery request that seeks information relevant to the claims raised in the instant matter pursuant to Rule 26(b)(1) of the Federal Rules of Civil Procedure.  Because of the explicit provision contained in the settlement agreement, the court need not reach the analysis set forth in <u>Young v. State Farm Mutual Auto. Ins. Co.</u>, 169 F.R.D. 72, 76 (S. D. W. Va. 1996).

The Wolfes' request number 2 also seeks drafts, correspondence and executed revisions of the settlement agreement in <u>NMC II</u>.  The court does not have these documents before it and, as noted above, Fresenius has asserted these documents are protected by the attorney-client privilege and the work product doctrine.

Rule 26(b)(5) requires a party claiming that information is privileged to "expressly make the claim," as Fresenius did in this matter.  However, Rule 26(b)(5) also requires the party to "describe the nature of the documents, communications, or tangible

21

things not produced or disclosed – and do so in a manner that, without revealing information itself privileged or protected, will enable other parties to assess the claim." Fed. R. Civ. P. 26(b)(5)(A)(i)-(ii). In response to request for production number 2, Fresenius asserted the attorney-client privilege, but has not produced a privilege log or otherwise complied with Rule 26(b)(5)(A)(ii).

Finally, the Wolfes seek an order compelling the testimony of Fresenius's former employees who refused to answer questions about the settlement in NMC II based on the attorney-client privilege. The Wolfes argue that Fresenius's waiver based on an advice of counsel defense in the instant matter should extend to NMC II. The Wolfes have not identified the testimony about which they complain, nor have they cited a single case in support of their assertion that waiver in the instant matter based on an advice of counsel defense should extend to the advice of counsel regarding the settlement in NMC II. The court notes that in NMC II, Fresenius did not raise an advice of counsel defense because it never answered the complaint. Thus, it appears that there was no waiver during the pendency of NMC II by virtue of an advice of counsel defense. In addition, as the undersigned noted in Equitable Prod. Co. v. Elk Run Coal Co., Inc., 2008 WL 5263735, at *4 (S.D. W. Va. Oct. 3, 2008), for a waiver to occur based on an advice of counsel defense, the party asserting the privilege must take

"the affirmative step of placing the legal advice they

22

received in issue. * * * [A]dvice is not in issue merely because it is relevant, and it does not come in issue merely because it may have some affect [sic] on a client's state of mind.  Rather, it becomes an issue where a client takes affirmative action to assert a defense and attempts to prove that defense by disclosing or describing an attorney's communication."

(quoting State ex rel.  USF&G v. Canady, 460 S.E.2d 677, 688 n.16 (W. Va. 1995)).  There has been no evidence presented to the court suggesting that Fresenius has taken the affirmative step of placing in issue in the instant matter, its reliance on counsel's advice related to the settlement in NMC II.  As the above discussion reveals, to the extent the Wolfes seek an order compelling the testimony of Fresenius's former employees, this issue has not been properly or fully presented to the court.

Thus, the court finds that Plaintiffs' Motion should be granted as to request number 2 with respect to the settlement agreement, subject to entry of the court's form protective order found on the court's website.  The court finds that Fresenius should produce the settlement agreement to the Wolfes on or before **May 11, 2009**.  Finally, Plaintiffs' Motion should be denied without prejudice to the extent they seek additional documents listed in request number 2 and an order compelling deposition testimony of former employees related to the settlement in NMC II.  If the depositions were taken in another district, Rule 37(a)(2), *Fed. R. Civ. P.*, requires any motion to be filed in that district.

Accordingly, it is hereby **ORDERED** that Plaintiffs' Motion to Compel Discovery is **GRANTED in part** and **DENIED in part** as set forth

23

above.   The parties shall bear their own costs.

The Clerk is directed to transmit a copy of this Memorandum Opinion and Order to counsel of record.

ENTER: April 24, 2009

Mary E. Stanley
United States Magistrate Judge